# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHARLES TOROSIAN and | ) | |
| DIANA TOROSIAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **Civil Action No.** |
| v. | ) | **15-11887-FDS** |
| | ) | |
| SANDRA GARABEDIAN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an intra-family dispute, arising out of the circumstances surrounding the last years and death of Garabed Dragoonian. Plaintiff Diana Torosian is Dragoonian's daughter, and plaintiff Charles Torosian is her husband and Dragoonian's son-in-law. Defendant Sandra Garabedian was apparently the companion of Dragoonian for many years. Plaintiffs are proceeding *pro se*.

The complaint asserts three counts, which overlap and are not entirely coherent.[1] In substance, plaintiffs appear to assert two claims. First, they assert that Sandra Garabedian caused them severe emotional distress because (1) she prevented Dragoonian from having contact with Diana for some years and (2) failed to notify Diana of the time and place of her

---

[1] The amended complaint is now the operative complaint in this action. However, because plaintiffs are proceeding *pro se*, the Court considers the factual allegations in the original complaint and plaintiffs' response to the show-cause order to be part of the amended complaint for purposes of resolving the motion for summary judgment. For the sake of convenience, the Court will simply refer to those documents together as the "complaint."

father's death and funeral, causing her to miss the funeral.  Second, they assert that Garabedian,

in some unspecified way, interfered with Diana's inheritance under Dragoonian's will and

prevented her from recovering money and property that had been promised to her.

For the reasons stated below, defendant's motion for summary judgment will be granted.

## I.    Background

### A.    Factual Background

Except where otherwise noted, the following facts are either undisputed or taken in the

light most favorable to the plaintiffs.

Garabed Dragoonian was, at the time of his death, a resident of Hampstead, New

Hampshire.  (Docket No. 34 at 6).  For some number of years, he had a companion named

Sandra Garabedian, who was also a resident of New Hampshire.  (*Id.* at 5-6).   Dragoonian died

on November 5, 2014.  (*Id.* at 6).  The complaint alleges that Dragoonian suffered from dementia

and amnesia in the last years of his life.  (Compl. ¶ 11).

Diana Torosian is the daughter of Dragoonian.  (*Id.* at 5).  Diana is a resident of Methuen,

Massachusetts.  (Docket No. 34 at 6).  She is not, apparently, the daughter of Sandra Garabedian.

(*Id.*).  Charles Torosian is Diana's husband.  (*Id.*).

Garabedian and Diana apparently had a difficult relationship.  (*Id.* at 6).  According to

Diana's daughter, Garabedian "would interfere with the phone conversations between Red and

Diana."  (*Id.*).  During his last years, Garabedian allegedly kept Dragoonian from having contact

with Diana.  (Am. Compl. ¶ 4).  The complaint further alleges that Garabedian failed to notify

Diana of Dragoonian's death and burial, and refused to give her "access" to his will.  (Compl.

¶¶ 3-5).  Diana appears to contend that Dragoonian promised to leave her a substantial sum after

his death, and that Garabedian has somehow interfered with this inheritance.  (Compl. ¶ 8).  It

appears that a will, purportedly Dragoonian's, was probated in New Hampshire.  (Def. Opp. Mem. at 1).  Plaintiffs contend that this will is illegitimate.  (Am. Compl. at 2).[2]

### B.    Procedural Background

Plaintiffs filed a complaint in this action on June 17, 2015.  Defendant filed three separate motions to dismiss on July 28, 2015.  The Court issued an order on September 25, 2015, directing plaintiffs to show cause why the complaint should not be dismissed for lack of subject-matter jurisdiction.  Plaintiffs filed a response to the show-cause order on October 16, 2015, together with an amended complaint.  Defendant then filed a further motion to dismiss on October 19, 2015.  On December 4, 2015, the Court issued an order dismissing all of plaintiffs' claims except for their claims of intentional infliction of emotional distress ("IIED") and intentional interference with inheritance or gift.

On March 31, 2016, defendant moved for summary judgment as to the remaining claims. Defendant contends that she is entitled to summary judgment because (1) New Hampshire does not recognize the tort of the intentional interference with inheritance or gift and (2) plaintiffs have not established the elements of an IIED claim.

## II.    Legal Standard

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted).  Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Essentially, Rule 56[ ] mandates the entry of summary judgment 'against a party who fails to make a showing sufficient

---

[2] The Court has already dismissed all claims concerning the legitimacy of the will.

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  In making that determination, the court must view "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id*. at 256-57.

## III.   Analysis

### A.   Intentional Interference with Inheritance or Gift

Plaintiffs contend that Garabedian in some way interfered with Diana's inheritance. According to plaintiffs, Dragoonian promised Diana that "there would be substantial money" provided to her, but Garabedian ultimately received the entirety of the property.  (Am. Compl. at 6).  Plaintiffs further contend that Garabedian "manipulated" Diana's relationship with her father and "[hid] the money and property that [Diana's] father had promised to give [her]."  *Id*.

Garabedian contends that this claim should be dismissed because New Hampshire law applies to the claim, and New Hampshire law does not recognize the tort of intentional interference with inheritance or gift.

The first question is which state's law should apply.  Massachusetts courts apply a functional approach to choice-of-law issues for tort claims.  *See Cosme v. Whitin Mach. Works, Inc.*, 417 Mass. 643, 646 (1994).  In *Cosme*, the Supreme Judicial Court of Massachusetts

4

followed the rule set forth in the Restatement (Second) Conflict of Laws § 145, which states:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> >
> > (b) the place where the conduct causing the injury occurred,
> >
> > (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> >
> > (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

417 Mass. at 646-47 (citing Restatement (Second) Conflict of Laws § 145).

Whatever exact conduct underlies the claim for intentional interference, it appears that the most important events occurred in New Hampshire. Both Garabedian and Dragoonian resided in New Hampshire, and it follows that any sort of interference that could have occurred would have occurred in that state. Certainly plaintiffs have submitted no evidence to the contrary. Indeed, the only apparent connection to Massachusetts is that the plaintiffs reside there. Accordingly, the Court will apply the law of New Hampshire to the claim for intentional interference with inheritance or gift.

Intentional interference with inheritance or gift is not a commonly-recognized tort. In fact, many states have yet to consider the tort at all, including New Hampshire. *See Umsted v. Umsted*, 446 F.3d 17, 20 (1st Cir. 2006) (citing Diane J. Klein, *A Disappointed Yankee in Connecticut (or Nearby) Probate Court: Tortious Interference with Expectation of Inheritance—A Survey with Analysis of State Approaches in the First, Second, and Third Circuits*, 66 U. Pitt. L. Rev. 235, 291 n. 341 (2004)).

5

A court sitting in diversity jurisdiction "'cannot be expected to create new doctrines expanding state law.'" *Katz v. Pershing, LLC*, 672 F.3d 64, 73-74 (1st Cir. 2012) (quoting *Gill v. Gulfstream Park Racing Ass'n*, 399 F.3d 391, 402 (1st Cir. 2005) ("After all, federal diversity courts are charged with ascertaining state law, not with reshaping it.")).  Because New Hampshire has not yet recognized the tort of intentional interference with inheritance or gift, plaintiffs cannot proceed on that theory.  Defendant's motion for summary judgment will therefore be granted as to the claim for intentional interference with inheritance or gift.

### B.       Intentional Infliction of Emotional Distress

The complaint further alleges that Garabedian knowingly and intentionally caused emotional harm to plaintiffs by interfering with their relationship with Dragoonian during the last years of his life.  It also alleges that Garabedian failed to inform Diana of her father's death, causing Diana to miss the funeral.  Plaintiffs contend that these incidents caused them severe emotional distress.

This claim does not require a choice-of-law analysis, because both New Hampshire and Massachusetts follow the Restatement (Second) of Torts § 46.  *See Tessier v. Rockefeller*, 162 N.H. 324, 341 (2011); *Sena v. Commonwealth*, 417 Mass. 250 (1994).  According to the Restatement, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  Restatement (Second) of Torts § 46.

There are four elements to an IIED claim:  "(1) that the defendant intended to cause, or should have known that [her] conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's

distress; and (4) that the plaintiff suffered severe distress." *Sena*, 417 Mass. at 263-64 (quoting *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976)); *accord Mikell v. School Admin. Unit No. 33*, 158 N.H. 723, 728-29 (2009).

Plaintiffs have provided affidavits stating that they enjoyed a loving relationship with Dragoonian and an unhappy relationship with Garabedian.  Plaintiffs have also provided affidavits describing an incident where Garabedian intercepted phone calls between Diana and Dragoonian.  There is little else in the record, and no evidence at all that Garabedian intentionally withheld information as to the death and funeral from the plaintiffs.

"[I]n determining whether the conduct was extreme and outrageous, the jury may look to the combined effect of the defendant's actions." *Rimscha*, 2008 WL 756216, at *3 (Mass. App. Ct. March 21, 2008).  Taking evidence in the light most favorable to the plaintiffs, there is evidence showing that the plaintiffs were very close with Dragoonian, and at some point Garabedian began to interfere.  That is not sufficient to establish extreme and outrageous misconduct.

Plaintiffs must also produce evidence sufficient to show that their distress was "severe." The distress must be so severe "that no reasonable [person] could be expected to endure it." Restatement (Second) of Torts § 145, comment j (1965).  This is meant to weed out "frivolous suits" where only "mere hurt feelings" are involved.  *Agis*, 371 Mass. at 345.  As to that element, plaintiffs have failed to satisfy their burden.  Nothing in the record shows any sort of emotional distress that rises to the level of severe.  The evidence provided in the affidavits is scant, to say the least, and the only definitive mention of observable symptoms is when Diana's sister-in-law attests that Diana had some sleepless nights.  (Speight Aff. ¶ 4).  Otherwise, all other mentions of distress are mere interpretations of the plaintiffs' facial expressions and second-hand accounts of

perceived emotional distress.  Plaintiffs themselves have offered nothing in the way of actual evidence, other than simply stating generally that they suffer from "severe emotional distress." *See* Am. Compl. ¶¶ 4, 5.  That is insufficient to establish that element of the claim.

Garabedian's motion for summary judgment on plaintiffs' claim of intentional infliction of emotional distress will therefore be granted.

## IV.   <u>Conclusion</u>

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.


**So Ordered.**


<u>/s/ F. Dennis Saylor</u>
F. Dennis Saylor IV
Dated:  August 1, 2016                                    United States District Judge